IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. DRAGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 12-cv-09569 |
| | ) | |
| VILLAGE OF BELLWOOD, a municipal corporation, FRANK A. PASQUALE in his individual and official capacity, and LENA M. MORELAND in her individual and official capacity, | ) ) ) ) ) | Honorable Judge Leinenweber

Magistrate Judge Mason

**JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**LEGAL STANDARD GOVERNING MOTIONS TO DISMISS**

In reviewing a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor. *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to ensure an opposing party is afforded fair notice of the nature of a pleader's claim and the grounds or basis upon which it rests. *Fed. R. Civ. P. 8(a)(2)*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**PLEADING STANDARD**

With the U.S. Supreme Court's recent decisions in *Twombly* and *Iqbal*, the Court adopted a "facial plausibility" standard to determine whether complaints state a claim. See *Bell Atlantic*, 550 U.S. 544; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under this "facial plausibility" standard judges first examine the complaint for any "conclusory" allegations,

that is, "threadbare recitals of the elements of a cause of action supported by conclusory statements." *Iqbal*, 556 U.S. at 678-79. Once the conclusory allegations are removed, the remaining facts are then weighed to determine if the complaint "states a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Notably, the Court in both *Twombly* and *Iqbal* disavowed a heightened pleading standard under this plausibility analysis, and proclaimed that the plausibility standard is not akin to a probability requirement. *Twombly*, 550 U.S. at 569 n.14; *Iqbal*, 556 U.S. at 678. Detailed factual allegations are not required, though Plaintiff should set forth "more than a sheer possibility that a defendant has acted unlawfully," and a pleading that simply offers labels and conclusions or that is devoid of factual enhancement will not suffice. *Iqbal*, 556 U.S. at 678. The 7th Circuit has interpreted the *Twombly/Iqbal* federal pleadings framework to require that a plaintiff merely "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Thus a court should ask itself *could* these things have happened, not *did* they happen. *Id*. Furthermore, it is "not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences. *Id*.

## ARGUMENT

**I.     Counts I and II each plead a plausible claim for First Amendment retaliation under § 1983 against Mayor Pasquale and Clerk Moreland.**

Plaintiff's Complaint, on its face, states two plausible causes of action for First Amendment retaliation against Mayor Pasquale ("the Mayor") and Clerk Moreland ("the Clerk"). Count I is based on Plaintiff's protected speech concerning the reporting of asbestos and mold in the Teen Zone, and Count II is based on Plaintiff's protected speech in refusing

or being coerced to perform political activities. Plaintiff's Complaint conforms to the pleading requirements of *Twombly*, *Iqbal*, and federal case law on the issue of First Amendment retaliation.

There has never been a heightened pleading standard for motive-based constitutional torts such as First Amendment retaliation. See *Crawford-El v. Britton*, 523 U.S. 574 (1998). To make out a *prima facie* case of First Amendment retaliation, a public employee must allege: (1) his speech was constitutionally protected, (2) he suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). The controversy raised by Defendant's Motion to Dismiss is whether Plaintiff sufficiently alleged that he engaged in constitutionally protected speech.

The Supreme Court has made clear that "public employees do not surrender all of their First Amendment rights by reason of their employment." *Morales v. Jones*, 494 F.3d 590, 595 (7th Cir. 2007). For a public employee's speech to be protected by the Constitution, the speech that motivated the employer's retaliation must be made in the employee's capacity as a private citizen. *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008). In determining what falls within the scope of a public employee's official duties, the practical inquiry is what "duties an employee actually is expected to perform" in their position. See *Garcetti v. Ceballos*, 547 U.S. 410, 424-425 (2006); *Morales*, 494 F.3d at 596.

Once a public employee's speech is found to have been made in his or her capacity as a private citizen, the court then examines if the speech addressed a matter of public concern. See *Connick v. Myers*, 461 U.S. 138 (1982). Whether a public employee's speech addresses a matter of public concern depends upon the content, form, and context of the speech as

revealed by the whole record. *Id.* at 147-148. The public concern element is satisfied "if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Id.* at 146. The *Connick* test further requires the court to consider "the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985).

Here, Count I alleges a plausible claim for First Amendment retaliation based on Plaintiff's reporting to OSHA and Union Local 705, as a private citizen, the existence of asbestos and mold hazards. The Complaint asserts that Plaintiff's official job duties included inspecting, maintaining, and repairing electrical equipment and components. (Compl. ¶ 12.) Nowhere is it alleged that asbestos and mold inspection, discovery, or removal were among Plaintiff's official duties. Thus, Plaintiff's speech was not made as a public employee because his job responsibilities did not include inspecting for mold or asbestos, and certainly did not include or contemplate reporting such hazardous findings to either OSHA or the Union. *See Garcetti*, 547 U.S. at 424-425. In fact, Plaintiff was not required to report any asbestos or mold-related discovery, and it cannot be said Plaintiff was merely "doing his job" when he reported the hazards to OSHA and the Union. *See Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007).

If it is necessary to plead more clearly the circumstances under which Plaintiff contacted OSHA and the Union, Plaintiff, with leave of court, will amend the complaint to set forth such circumstances; that is, that he made his report to OSHA and the Union on his own time and not during Village work hours, and did so anonymously, with the hope that the

Mayor and the Clerk would not find out and retaliate against him. (Compl. ¶¶ 28-30.) These are the actions of an individual who, after first notifying the Mayor and the Clerk, recognized the Village's lack of concern with remedying the Teen Zone's hazards and took it upon himself to report the health and safety concerns to another authority. (Compl. ¶¶ 28-30.) Therefore, Plaintiff's speech as alleged in Count I was made as a private citizen, however if the court deems otherwise, Plaintiff requests leave of court to clarify these allegations.

Plaintiff's speech also relates to matters of public concern. Plaintiff's speech regarding the health and safety risks of the Teen Center were made to protect other Village employees and private contractors working inside the Teen Zone, as well as to protect the general public who could have occupied the Teen Zone in its asbestos and moldy hazardous state had Plaintiff not complained to OSHA and the Union. (Compl. ¶¶ 28-32, 86-87.) *See Linhart*, 771 F.2d at 1010. Defendants' argument that Plaintiff made the reports because he feared for his own health and safety does not overcome Plaintiff's pleadings with respect to that matter. *See Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002) (holding that a personal aspect contained within the motive of the speaker does not remove the speech from the scope of public concern).

Plaintiff 's speech directly implicated important matters of social and political concern to the Bellwood community and beyond. *See Connick*, 461 U.S. at 146. Such speech was not made in furtherance of Plaintiff's purely private interests, rather, his reports to OSHA and the Union concerned hazardous conditions in a public building and on a public project that had the potential to cause harm to many people other than himself.

Count II states a plausible claim for First Amendment retaliation against Mayor Pasquale and Clerk Moreland based on Plaintiff's speech and speech activity in refusing to

volunteer his labor and materials to renovate the Mayor's Teen Center, and Plaintiff's complaining about having to distribute campaign literature and having to work on the Mayor's private residence; all of which was done in Plaintiff's capacity as a private citizen. It cannot sincerely be argued that Plaintiff, as the Village's electrical inspector, was required to: (1) volunteer his labor or materials to renovate the Mayor's Teen Zone, the centerpiece of his re-election campaign (Compl. ¶¶ 12, 18-19, 21-23, 38, 66.); (2) to repair and maintain the Mayor's private residence, the registered headquarters for the Bellwood First Party (Compl. ¶¶ 14-15, 38, 66.); or (3) to distribute campaign literature for the Bellwood First Party (Compl. ¶¶ 38, 66.). Plaintiff therefore acted as a private citizen when he spoke out about the political activities he was directed to perform.

Plaintiff's speech and speech activity also involves matters of public concern. Plaintiff was required to distribute campaign literature and work at the Mayor's private residence, the headquarters for the Bellwood First Party, on both Village time and Plaintiff's own time. (Compl. ¶ 66.) This is of political and social concern because Bellwood taxpayers were unknowingly contributing to the Mayor's re-election campaign and paying for improvements to the Mayor's home that took place while Plaintiff was performing these political activities on Village time and while receiving a Village salary. Furthermore, the political activity Plaintiff was coerced to do implicates numerous First Amendment freedom of speech rights as well as the free exercise of one's political rights. These are all issues of political and social public concern which rise above a mere personal grievance with either the Mayor or the Clerk.

Lastly, at the pleading stage, Plaintiff is required to assert a pretextual basis for his termination that is plausible on its face, not explain why the Village's "budgetary reductions"

pretext is not plausible. *See Iqbal*, 556 U.S. at 678. Given that Plaintiff's Complaint states that his employment was terminated by the Mayor and the Clerk as a result of him speaking out as a private citizen on matters of public concern, Plaintiff's Complaint sets forth sufficient factual allegations for two plausible First Amendment retaliation claims.

>    II.    Counts I and II each plead a plausible *Monell* claim under § 1983 against the Village of Bellwood.

Plaintiff has sufficiently pled that his termination was caused by persons with final policy-making authority. Mayor Pasquale was one such final policy-maker. (Compl. ¶¶ 7, 42, 50, 58.) State or local law determines whether a person has final policy-making authority for purposes of a § 1983 action. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). The Village of Bellwood Code of Ordinances ("the Code") sets forth the duties and powers of the Village's various elected officials and appointive officers. The Board of Trustees is the legislative department of the village government. (*Ex. A.*) According to the Code, the Village President, or Mayor, also functions as the President of the Village's Board of Trustees. (*Ex. B.*) Section 31.20(C) describes the general duties of the Mayor as having "supervision over all the executive officers of the village, and over all the employees of the village." (*Ex. B.*) Accordingly, the Mayor's power was in no way constrained by any other Village body or policy, and the Mayor's decisions were not subject to review by any other Village board or individual. Plaintiff's pleadings that the Mayor was a final policy-maker are more than adequate.

Clerk Moreland was also a final policy-maker with respect to the decision to terminate Plaintiff's employment. (Compl. ¶¶ 8, 42, 50, 58.) An executive official may have policy-making authority by express delegation. *Waters*, 580 F.3d at 581. The Code states that the Mayor "shall have the power to delegate to any such officer any duty which is to be

performed when no specific officer has been directed to perform that duty." (*Ex. B.*) As Plaintiff pled, Mayor Pasquale delegated to Clerk Moreland joint authority to make employee discharge decisions, and Clerk Moreland thereafter exercised such authority when she and the Mayor jointly made the decision to terminate Plaintiff's employment. (Compl. ¶¶ 8, 42.) Furthermore, the role of Village Clerk is the only electoral position in the Village aside from the Mayor and the Board of Trustees. (*Ex. C.*) Therefore, Clerk Moreland's discretion and power were neither constrained nor subject to review by anyone except the Mayor, who, as alleged, delegated to Clerk Moreland the power to discharge. Plaintiff's pleadings that Clerk Moreland was a final policy-maker adequately establish the necessary basis for her final policy-making status.

Plaintiff's Complaint states two plausible *Monell* claims against the Village of Bellwood ("the Village") since Mayor Pasquale and Clerk Moreland were both final policy-makers that conjured up and carried out retaliatory acts against Plaintiff and other Village employees who interfered with their objectives. As the Complaint states, Plaintiff's speech and the exercise of this Village policy were the reasons for Plaintiff's retaliatory termination.

Alternatively, Plaintiff has adequately pled an official policy of the Village that is so widespread that it constitutes a custom or usage. Local governments may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision-making channels." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). A plaintiff may demonstrate an official policy through: (1) an express policy, (2) a widespread practice that constitutes a custom or usage with the final force of law, or (3) an allegation that

the constitutional injury was caused by a person with final policy-making authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

Plaintiff has alleged that the Village had a policy to "intimidate, penalize, or retaliate against those who exercise their rights in a way disapproved of by the Village." (Compl. ¶¶ 61, 71). This implicit policy is supported by the fact that not only was Plaintiff terminated for both speaking out about hazardous conditions at the Teen Zone and complaining about having to do political work, but Ronald Janis and Joseph Villacci were also fired for very similar speech. Mr. Janis' employment was terminated because he refused to volunteer non-Village time to the renovation of the Mayor's Teen Zone, because he reported hazards concerning the Teen Zone to the Mayor and the Clerk, and because he failed to attend the Mayor's campaign meetings. (Compl. ¶¶ 23, 25, 27, 34, 36, 39, 49, 53).

This official policy was a moving force behind Plaintiff's constitutional violation because the Mayor and the Clerk acted intentionally and maliciously in executing their retaliatory policy and terminating Plaintiff's employment. (Compl. ¶¶ 60, 63, 70, 73.) Given the near simultaneous firings of Plaintiff, Mr. Janis, and Mr. Villacci for engaging in substantially similar speech, and considering the longstanding existence of the Village's electrical and plumbing departments which were suddenly closed with no notice or internal discussion, the Complaint properly alleges the Village had a policy of retaliating against those who exercise their constitutional rights in a manner that interferes with Defendants' political objectives.

In a § 1983 action against a final policy-maker, a plaintiff must allege that the policy-maker intentionally deprived him of a constitutional right. *Waters*, 580 F.3d at 583. A plaintiff must also show that his speech was the reason that the employer decided to act.

*Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). As to Count I, Plaintiff pleads that completion of the Teen Zone prior to the 2013 mayoral election was an essential component of Mayor Pasquale's re-election campaign, and that the Mayor publicized such through campaign literature. (Compl. ¶¶ 18, 19.) Thereafter, Plaintiff discovered asbestos and mold within the Teen Zone building and reported it first to the Mayor and the Clerk, and then to OSHA and Union Local 705 when the Village failed to act. (Compl. ¶¶ 24, 26, 28, 29, 55.) Union Local 705's response to Plaintiff's report was to shut down the jobsite, thereby delaying renovation and construction of the Teen Zone. (Compl. ¶¶ 31, 32.) The Mayor then told Plaintiff, both directly and through Public Works Director Marty Walker, to stop speaking negatively about the Teen Zone. (Compl. ¶¶ 33, 34, 36.) Following Plaintiff's termination Mayor Pasquale told Plaintiff that he had been terminated because he spoke to the Union, and stated to members of the Board of Trustees that Plaintiff was terminated for non-budgetary reasons. (Compl. ¶¶ 48, 53.) At the time Plaintiff was terminated and the Village's electrical department was closed, the position of Village Electrical Inspector was an appointive officer position filled by the Mayor (*Ex. D.*), and the electrical department itself had existed for over 50 years. (Compl. ¶ 11.)

Count II pleads multiple facts, incidents, and occasions which together motivated Defendants to terminate Plaintiff. Plaintiff alleges he was terminated because he complained about or refused to perform various political activities at the request or demand of the Mayor and the Clerk. For one, Plaintiff was fired because he refused to volunteer his labor and materials for the renovation of the Teen Zone building that was paramount to the Mayor's re-election campaign. (Compl. ¶¶ 18, 19, 21-23, 38, 40, 46, 53, 66.) Also contributing to the angst which led to the motivation to fire him, were Plaintiff's complaints about having to

volunteer his labor and materials to improve the Mayor's private residence, the registered headquarters for the Mayor's Bellwood First Party. (Compl. ¶¶ 14, 15, 38, 40, 46, 53, 66.) Finally, Plaintiff's complaints about having to distribute campaign at designated polling places motivated his discharge. (Compl. ¶¶ 38, 40, 46, 53, 66.)

At this stage Plaintiff is not required to *prove* any allegation, but is merely obliged to allege sufficient factual information to support the plausibility that Plaintiff was terminated for exercising his First Amendment rights. *Iqbal*, 556 U.S. at 678.

### III. Count III pleads a plausible claim for retaliatory discharge under Illinois law against the Village, Mayor Pasquale, and Clerk Moreland.

Defendants erroneously equate what Plaintiff must ultimately *prove* to prevail, with what Plaintiff must merely *plead* to state a claim. This argument is misplaced at this stage in the proceedings as Plaintiff's Complaint adequately states a cause of action for retaliatory discharge. Significantly, the majority of case law supporting Defendants' motion does not involve pleading-based motions under Rule 12(b)(6), but rather evidentiary issues and motions inapplicable at this stage of the litigation. All Plaintiff is presently required to do is adequately *allege* a cause of action for retaliatory discharge under Illinois law.

The Illinois Supreme Court has held that a plaintiff states a valid claim for retaliatory discharge if he alleges that he was: "(1) discharged; (2) in retaliation for his activities; and (3) that the discharge violates a clear mandate of public policy." *Sherman v. Kraft General Foods, Inc.*, 272 Ill.App.3d 833, 836, 651 N.E.2d 7 (4th Dist. 1995), quoting *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 35 (Ill. 1995). While a claim for retaliatory discharge may fail if the employer has a valid, non-pretextual basis for the discharge, the general rule is that it is inappropriate to make determinations regarding pretext at the pleading stage.

*Clemons v. Mechanical Devices Co.*, 184 Ill.2d 328, 336 (Ill. 1998); *Hoglund v. Signature Mgmt. Group, Inc.*, 2009 WL 1269258, at *2 (N.D.Ill. May 4, 2009).

Here Plaintiff has alleged that he satisfactorily performed his job for eight years (Compl. ¶¶ 9, 44.). He reported to the Mayor, the Clerk, OSHA, and the Union hazardous conditions in the Teen Zone (Compl. ¶¶ 26, 29, 76-77.), and he complained to the Mayor and the Clerk about having to perform political activities (Compl. ¶¶ 23, 38, 40, 46, 53, 80.). Shortly thereafter, the mayor and the clerk made the decision to discharge him in retaliation for his complaints about political work and his reports to OSHA and the Union (Compl. ¶¶ 46, 48, 53, 82, 86.). Plaintiff's discharge was in violation of public policy pursuant to the Occupational and Safety Health Act of 1970, the Illinois Constitution, and the Illinois Local Governmental Employees Political Rights Act (Compl. ¶¶ 83-86.), and the reason given for Plaintiff's discharge was purely pretextual (Compl. ¶¶ 46, 81-82.).

Finally, Defendants argue that Plaintiff's retaliatory discharge claim is barred by the Mayor's statutory power to remove an appointed officer if removal is in the interests of the municipality. Defendants omit, however, the fact that removal of an officer pursuant to 65 ILCS 5/3.1-35-10 requires the notification and consent of the corporate authorities, in this case the Village Board. 65 ILCS 5/3.1-35-10. Plaintiff has explicitly pled that the Mayor and the Clerk themselves closed the electrical department, thereby discharging Plaintiff, without the advice and consent of the Village Board. (Compl. ¶¶ 42.)

Furthermore, Defendants reliance on *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 508 (Ill. 1991), in support of this mayoral statute is misplaced. In *Fellhauer*, the court found that plaintiff failed to demonstrate that his discharge was in violation of a clearly mandated public policy, and that the limited benefit to be gained by recognizing a claim for retaliatory

discharge was outweighed by the need for mayoral discretion in that instance. *Id.* at 508-510. In contrast, here Plaintiff has identified three separate sources of public policy, all of which are compelling and uncontested, and so recognition of a claim for retaliatory discharge is "necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy." *Id.* at 508. Thus in the very words of *Fellhauer*, the mayoral statute cannot operate to bar Plaintiff's claim against the Mayor or any other Defendant.

### IV. Count IV pleads a plausible claim for conspiracy under § 1983 against Mayor Pasquale and Clerk Moreland.

To establish a prima facie case of civil conspiracy under § 1983, a plaintiff must allege an express or implied agreement among defendants to deprive a person of his constitutional rights, and actual injury resulting from overt acts taken in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). To state a claim for conspiracy a plaintiff need only plead "sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overall acts must be pleaded specifically." *Quninones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985). The 7th Circuit has explained that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date [of the agreement], so that the defendant has notice of what he is charged with." *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002).

Here, Plaintiff has plainly set forth the parties, purpose, and approximate date of Defendants' agreement to conspire to deprive him of his rights. The two parties to the conspiracy are Mayor Pasquale and Clerk Moreland. (Compl. ¶¶ 90-97.) The purpose of the conspiracy was three-fold: (1) to punish Plaintiff for exercising his right to freedom of speech

when reported asbestos and mold hazards and complained about having to do political work; (2) to dissuade other Village employees from exercising their rights to freedom of speech; and (3) to prevent Plaintiff from exercising his right to freedom of speech in the future. (Compl. ¶ 90.) The time of the conspiratorial agreement was in early 2012. (Compl. ¶ 90.) Finally, the Mayor and the Clerk are alleged to have acted in furtherance of the conspiracy by discharging Plaintiff's employment with the Village and inexplicably closing the Village's electrical department. (Compl. ¶¶ 91-92, 95.)

The intra-corporate conspiracy doctrine, raised by Defendants, bars a conspiracy claim against the managers of a corporation who are jointly pursuing its lawful business even though acts within the scope of their employment are said to be discriminatory or retaliatory. *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). The Seventh Circuit has not yet decided whether the inter-corporate conspiracy doctrine applies to conspiracy claims brought under § 1983. *See Johnson v. Village of Maywood*, 2012 WL 5862756, at *2 (N.D.Ill. Nov. 19, 2012). Many district courts in this circuit do not apply the intra-corporate conspiracy doctrine to § 1983 claims. *See*, *e.g., Id.*; *Hobley v. Burge,* 2004 WL 1243929, at *10-11 (N.D.Ill. June 3, 2004); *Howard v. City of Chicago,* 2004 WL 2397281, at *12 (N.D.Ill. Oct. 25, 2004); *McDorman v. Smith,* 2005 WL 1869683, at *6 (N.D.Ill. Aug. 2, 2005); *Newsome v. James,* 2000 WL 528475, at *14-16 (N.D.Ill. Apr. 26, 2000).

As in the aforementioned cases, the doctrine should not apply to bar Plaintiff's claim because the acts of Defendants Pasquale and Moreland amount to egregious conduct. The purpose of the intra-corporate conspiracy doctrine is "to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions" that are

later alleged to be discriminatory or retaliatory. *Id.* at *15. However, the conduct Plaintiff alleges here does not fit this mold. Rather, Defendants' acted with malicious retribution and personal animus toward Plaintiff by summarily terminating his employment; there was no two week notice or extension of time to allow Plaintiff to find other employment to support his family. (Compl. ¶¶ 93-94, 97.) *See Hartman v. Board of Trustees of Community College Dist. No. 508,* 4 F.3d 465, 469-471 (7th Cir. 1993) (holding the doctrine does not apply in circumstances where corporate employees are shown to have been motivated solely by personal animus or where retaliation is part of some broader retaliatory pattern).

Given that Defendants Pasquale and Moreland decided to silence Plaintiff by promptly terminating his employment and closing the Village's electrical department, without the advice and consent of, or even notice to, the Village Board, and despite the fact that the electrical department had been in existence for over 50 years, Defendants' actions cannot be said to have been the culmination of routine village decision-making. In addition, the Mayor and the Clerk terminated Ronald Janis and Joseph Villacci for more or less the same speech in which Plaintiff engaged. The Mayor and the Clerk further responded by closing the Village's plumbing department without the advice or consent of the Village Board.

## **CONCLUSION**

WHEREFORE, in light of the foregoing, Plaintiff, MICHAEL P. DRAGER, respectfully requests that this Honorable Court deny Defendants', VILLAGE OF BELLWOOD, FRANK A. PASQUALE, and LENA M. MORELAND, Motion to Dismiss Plaintiff's Complaint.

        Respectfully Submitted,

        MICHAEL P. DRAGER

Dated: March 19, 2013        By:   /s/James L. DeAno
                                DeANO & SCARRY, LLC

James L. DeAno #6180161
Howard P. Levine #6197286
Collin D. Woodward #6310529
**DeAno & Scarry, LLC**
153 W. Jackson, Suite 550
Chicago, IL 60602
Ph: (630) 690-2800
Fx: (630) 690-2853