IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL P. DRAGER,

               Plaintiff,

      v.

VILLAGE OF BELLWOOD, a
Municipal Corporation; FRANK A.
PASQUALE, in his Individual
Capacity and Official Capacity;
and LENA M. MORELAND, in her
Individual Capacity and
Official Capacity,

               Defendants.

Case No. 12 C 9569

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Village of Bellwood, Frank A. Pasquale and Lena M. Moreland's Motion to Dismiss Plaintiff's Complaint. [ECF No. 12] For the reasons stated herein, Defendants' Motion is denied in part and granted in part.

## I. BACKGROUND

The Village of Bellwood (the "Village") employed Plaintiff Michael P. Drager ("Plaintiff") as an electrical inspector from 2004 to March 2012. As part of his job, he inspected, maintained, and repaired electrical equipment. Plaintiff alleges that Defendant Frank A. Pasquale ("Mayor Pasquale"), the Village Mayor, also compelled him to participate in political activities as part of his employment. These political activities included

distributing campaign literature, attending political meetings, and providing free home improvements at Mayor Pasquale's home and political headquarters. Plaintiff alleges Mayor Pasquale told him these activities were part of his job even though Plaintiff notified Mayor Pasquale that the compelled political activities kept him from doing his official duties.

In 2011, the Village acquired property to develop into a teen community center ("Teen Zone"). Mayor Pasquale featured the Teen Zone as part of his 2013 reelection campaign. Mayor Pasquale's Chief of Staff, Peter Tsiolis ("Tsiolis"), informed Village employees they were expected to provide free labor and materials to ensure the Teen Zone opened within budget and before the 2013 election.

In a January 2012 meeting, Mayor Pasquale instructed Plaintiff to inspect the Teen Zone property and outline any necessary repairs. At the meeting, Tsiolis told Plaintiff that Pasquale and Defendant Lena M. Moreland ("Clerk Moreland"), the Village Clerk, would view him differently if he did not volunteer his personal time and materials toward completing the Teen Zone, and that they controlled Plaintiff's employment.

Plaintiff inspected the Teen Zone as requested. He claims he reported finding asbestos, mold, and building code violations in a meeting attended by Mayor Pasquale, Clerk Moreland, and Village officials. Defendants made no comment in response to Plaintiff's

findings and took no action to remedy the violations. Work thus continued on the Teen Zone.

Plaintiff claims that he then shared his findings from the Teen Zone inspection with OSHA and Local Union 705 in response to the Defendants' inaction. Work at the Teen Zone soon stopped. Shortly thereafter, Mayor Pasquale instructed Plaintiff not to speak negatively about the Teen Zone. Also, the Village's Public Works Director informed employees their jobs would be "privatized" if they reported any additional problems at the Teen Zone. Compl. ¶ 34.

On March 22, 2012, Tsiolis told Plaintiff that the Village would be terminating his job. The next day, Mayor Pasquale and Clerk Moreland, citing budgetary reasons, eliminated the Village's electrical department and terminated Plaintiff. Plaintiff alleges that Mayor Pasquale and Clerk Moreland acted without the Village Trustees' knowledge or approval.

Plaintiff filed a four-count Complaint on November 30, 2012. Plaintiff alleges two First Amendment retaliation claims under 42 U.S.C. § 1983, a retaliatory discharge claim under Illinois common law, and a § 1983 claim of conspiracy to deprive him of his constitutional rights. Plaintiff alleges Defendants violated his constitutional rights in retaliation for: (1) complaining about compelled political activity; and (2) notifying OSHA and Local Union 705 about the presence of hazardous materials at the Teen

Zone. Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 12]

## II.  **LEGAL STANDARD**

A plaintiff must provide a short and plain statement of the claim showing he is entitled to relief. FED. R. CIV. P. 8(a)(2). When ruling on a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff by accepting all well-pled facts as true and drawing all inferences in his favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). A pleading does not need detailed factual allegations, but it must contain more than conclusory allegations and a recitation of the elements to a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, state a claim for relief that is plausible on its face. *Id.* A claim is plausible on its face when the court can reasonably infer a defendant's liability from the allegations before the court. *Id.*

## III.  **ANALYSIS**

### A.  **Official Capacity Claims (Counts I-III)**

Plaintiff asserts Counts I-III against Mayor Pasquale and Clerk Moreland in their individual and official capacities. Plaintiff also asserts these claims against the Village.

Section 1983 requires personal involvement in the alleged constitutional deprivation for individual liability. *Mixon v. Manno,* No. 12 CV 0562, 2013 U.S. Dist. LEXIS 43980 at *5 (N.D. Ill. Mar. 28, 2013). However, actions brought against individual defendants in their official capacities are treated as suits brought against the government entity itself. *Id.* at *7. Thus, Plaintiff's claims against Mayor Pasquale and Clerk Moreland in their official capacities are redundant, as the Village is already a named Defendant in Counts I-III. Accordingly, the Court dismisses Plaintiff's official capacity claims against Mayor Pasquale and Clerk Moreland with prejudice for Counts I-III. *See, id.* (dismissing § 1983 claim against defendant in official capacity when government entity also a named defendant); *see also*, *Day v. River Forest Sch. Dist.,* No. 10 C 4426, 2011 U.S. Dist. LEXIS 28201 at *9-10 (N.D. Ill. Mar. 17, 2011)(same).

## B. Count I – § 1983 Deprivation of Right to Free Speech (Retaliation for Teen Zone Inspection Report)

Count I alleges Mayor Pasquale, Clerk Moreland and the Village terminated Plaintiff's employment unlawfully in retaliation for Plaintiff's report to the Village, OSHA, and Local Union 705 that he found asbestos, mold, and other hazards at the Teen Zone. Defendants withdrew their Motion to Dismiss Count I. Defs.' Reply at 2, n.1. Therefore, Count I stands as to all Defendants.

Despite withdrawing their Motion to Dismiss Count I in their Reply, Defendants appear to argue that both § 1983 claims against

Clerk Moreland, including Count I, should be dismissed due to the lack of any allegation that Clerk Moreland was involved personally in violating Plaintiff's constitutional rights. *See,* Defs.' Reply at 1-2. To the extent this conflict is simply careless drafting on Defendants' part, and that they still intended to seek dismissal of Count I as to Clerk Moreland individually, the Court finds Plaintiff has pled that Clerk Moreland was involved personally in the alleged constitutional deprivation.

Plaintiff claims that Clerk Moreland had authority to make decisions regarding the discharge of Village employees, which was delegated to her by Mayor Pasquale. Importantly, Plaintiff alleges that Clerk Moreland was present in the January 2012 post-inspection meeting during which Plaintiff described the problems with the Teen Zone site. He alleges that Clerk Moreland made no response and took no action to remedy the violations, but proceeded with the project by directing Village employees to begin working on the buildings. Finally, Plaintiff alleges that Clerk Moreland directed the Village's electrical department to be terminated, and for a letter to be issued to Plaintiff terminating his employment under the pretext that the department was being closed for budget reasons.

The Court agrees that these allegations are not extensive or detailed, particularly when compared to those levied against Mayor Pasquale. However, under the pleading standards of Rule 8, they

need not be.  *See,* FED. R. CIV. P. 8(a).  They are sufficient to indicate that Clerk Moreland was involved personally in the alleged constitutional deprivation, and as such, Count I survives as to all Defendants.

### C. Count II – § 1983 Deprivation of Right to Free Speech (Compelled Political Activity Retaliation)

Count II alleges that Mayor Pasquale, Clerk Moreland and the Village terminated Plaintiff's employment unlawfully in retaliation for engaging in protected political speech during a Village meeting in which he complained that being coerced to do political activities interfered with his job duties.  Defendants argue that Count II fails for three reasons:  (1) Plaintiff's speech was made pursuant to his official duties; (2) the alleged speech was not protected political or public speech; and (3) Plaintiff fails to identify a specific Village policy, practice, or custom that violated his rights.  The Court will examine whether Plaintiff pled a cause of action against each Defendant.

#### 1. *Mayor Pasquale*

To state a claim for unlawful First Amendment retaliation, a public employee must plead:  (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter him from exercising his First Amendment rights; and (3) his speech was a motivating factor in the employer's adverse action.  *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).  Plaintiff pleads the last two requirements.  Specifically, Plaintiff alleges that he was

fired by Mayor Pasquale, a deprivation likely to deter him from exercising his First Amendment rights. He also claims that Mayor Pasquale was motivated to fire him because Plaintiff expressed his dissatisfaction at being compelled to participate in various political activities. Thus, the question is whether Plaintiff's complaints consist of constitutionally protected speech.

When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). However, public employees do not surrender their First Amendment rights by reason of their employment. *McGarry v. McClellan*, No. 11 C 4601, 2012 U.S. Dist. LEXIS 76730 at *7 (N.D. Ill. June 4, 2012). So long as employees are speaking as citizens about matters of public concern, they face only those speech restrictions necessary for their employers to operate efficiently and effectively. *Id.* Defendants argue that Plaintiff's complaints were made neither as a private citizen nor in concern for the public.

The threshold inquiry is whether the individual was speaking as a citizen or as a public employee. *Id.* To make this determination, the Court must:

> [T]ake a practical view of the facts alleged
> in the complaint, looking to the employee's
> level of responsibility and the context in
> which the statements were made . . . [T]he

> relevant question is whether the expression
> was something done pursuant to the employee's
> professional duties?  If so, then the First
> Amendment has no application.

*McGarry*, 2012 U.S. Dist. LEXIS at *8 (quotations omitted).

Plaintiff alleges that as an employee of the Village's electrical department from 2004-2012, he "performed inspections, maintenance, and repairs of electrical equipment and components in private structures and properties as required by Village code." Compl. ¶ 12.  He alleges that he complained to Mayor Pasquale and other Village officials about politically-related work such as: (1) performing electrical work at Mayor Pasquale's private residence, the registered headquarters for the Bellwood First Party, on Plaintiff's personal time and at his own expense for labor and materials; (2) distributing literature supporting Mayor Pasquale and other political candidates at designated polling places; (3) attending numerous campaign meetings supporting Mayor Pasquale's reelection; and (4) being directed to volunteer his professional services as an electrician, without compensation for his labor and materials, to rehabilitate the Teen Zone.  *Id.* ¶ 66.

Based on these statements, the Court fails to see how these complaints could be construed as dealing with the Plaintiff's professional responsibilities.  It is true that as part of the Village's electrical department, he was responsible for maintaining and repairing electrical equipment in Village properties, but it does not appear to be part of his professional responsibilities to

perform such electrical work on both the Mayor's residence and the Teen Zone at his own expense for both labor and materials. Nor does it appear to be part of his duties as part of the electrical department to distribute literature supporting Mayor Pasquale or to attend meetings supporting the Mayor's reelection. As these activities appear outside the scope of Plaintiff's employment responsibilities, the First Amendment applies.

This does not end the inquiry, however. The Court must also determine whether Plaintiff's speech addresses matters of public concern. "To determine whether an employee's speech addresses a matter of public concern, the court looks at the 'content, form, and context of a given statement, as revealed by the whole record.'" *McGarry,* 2012 U.S. Dist. LEXIS 76730 at *12 (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009)). Speech that serves a personal interest, instead of a public one, does not satisfy the standards for First Amendment protections. *Id.* at *12-13. However, the fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove it from the scope of public concern. *Id.* Instead, "courts consider whether the subject matter of the speech is potentially of interest to the public." *Id.*

Defendants argue that Plaintiff's speech does not address matters of public concern because Plaintiff was complaining only out of personal interest. Plaintiff alleges that he complained to

Mayor Pasquale "about being required to perform political activities during work hours while he had other electrical maintenance work to complete." Compl. ¶ 40. Read in the light most favorable to the Plaintiff, this allegation could indicate that Plaintiff was complaining not just because the political activities were interfering with his work schedule, but because they interfered with Village electrical work. Certainly it would be of public interest to know that Village electrical work was not being done because a member of the electrical department was being compelled to participate in political activities. It is thus plausible that Plaintiff was motivated by more than just his personal interest when he complained to Mayor Pasquale, and that is sufficient to survive a motion to dismiss. *See, McGarry*, 2012 U.S. Dist. LEXIS 76730 at *14-15.

Plaintiff has thus pled sufficiently Count II against Mayor Pasquale in his individual capacity.

### *2.  Clerk Moreland*

It is unnecessary for the Court to engage in such a detailed analysis with respect to Clerk Moreland. Plaintiff fails to state a valid claim for First Amendment retaliatory discharge against Clerk Moreland under Count II. Under *Iqbal*, Plaintiff must plead more than conclusory allegations. *Iqbal,* 556 U.S. at 678. As stated previously, in a § 1983 suit against an individual, a plaintiff must plead a defendant's personal involvement in the

constitutional violation. *See, Mixon*, 2013 U.S. Dist. LEXIS 43980 at *5. Here, Plaintiff's allegations that Clerk Moreland terminated him unlawfully in response to his complaints about compelled political activity do not satisfy either requirement.

Plaintiff fails to plead that Clerk Moreland was involved personally with respect to the alleged compelled political activity. All of the alleged compelled activity, as pled in the Complaint, appears to be for Mayor Pasquale's benefit and at his behest. There are no allegations that Clerk Moreland sought to compel such activity, or that any of it was for her benefit. Nor does Plaintiff allege that Clerk Moreland was even present at the meeting during which Plaintiff complained about the compelled political activities. Indeed, Plaintiff only mentions Mayor Pasquale with respect to that meeting. *See,* Compl. ¶ 40 ("in the presence of Mayor Pasquale and other Village officials and employees, Plaintiff complained to Mayor Pasquale about being required to perform political activities . . . Mayor Pasquale responded that the political activities were part of Plaintiff's regular job duties and must be performed.").

While Plaintiff alleges that Clerk Moreland was involved in his termination, he has failed to plead any facts from which the Court can infer that Clerk Moreland terminated him in retaliation for his complaints regarding compelled political activities. For

these reasons, Defendants' Motion to Dismiss Clerk Moreland is granted as to Count II.

### 3. *The Village*

Defendants argue Plaintiff's First Amendment retaliatory discharge claim against the Village should be dismissed because it fails to plead a specific policy, practice, or custom that violated Plaintiff's protected rights. A local government may not be sued under § 1983 for an injury solely inflicted by its agents. *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). To state a claim for municipal liability under § 1983, a plaintiff must plead the constitutional violation was caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority. *Matthews v. Du Page County Election Comm'r*, No. 10 C 2208, 2011 U.S. Dist. LEXIS 24679 at *2-3 (N.D. Ill. Mar. 11, 2011).

Plaintiff claims that he pled a *Monell* claim with respect to Count II, either through pleading a widespread, unwritten custom of terminating employees who speak out, or by pleading that Plaintiff was terminated wrongfully by a municipal agent with final policymaking authority. The former argument is unsuccessful. Plaintiff pled that two other employees, Ronald Janis ("Janis") and Joseph Villacci ("Villacci"), were also terminated. However, there are no allegations in the Complaint that either of these

- 13 -

individuals was fired because they spoke out against the type of compelled political activity that Plaintiff alleges as the basis for Count II. In addition, even had he alleged that Janis and Villacci were terminated in retaliation for voicing their displeasure at being compelled to perform political activities, the firing of these three employees would be insufficient to establish a "widespread custom or practice." *See, Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2009) ("We do not adopt any bright-line rules defining a wide-spread custom or practice. . . . [T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three.") (quotations omitted).

Plaintiff's allegations that the constitutional violation was caused by a municipal agent with final decision-making authority fare better. Plaintiff alleges that Mayor Pasquale, as the Village's Mayor, possessed supervisory authority over all Village departments, and thus had authority to discharge Village employees and delegate that discharge authority to other Village officers. Compl. ¶ 7. As support, Plaintiff points to Section 31.20(C) of the Village of Bellwood Code of Ordinances, which entrusts the Mayor with "supervision over all the executive officers of the Village, and over all the employees of the Village." Vill. of Bellwood Code § 31.20(C). Plaintiff also alleges that Mayor

Pasquale and Clerk Moreland, "as a matter of custom and practice," possessed final policy making authority to discharge Village employees. Compl. ¶ 58. Plaintiff alleges that Mayor Pasquale, as a final policy maker, directed that the Village's electrical department be terminated without the advice, consent or knowledge of the Village Board of Trustees. Compl. ¶ 40. The Complaint also states that Mayor Pasquale terminated other Village employees.

Defendants claim these allegations are insufficient, arguing that various sections of the Illinois Municipal Code establish that the Board of Trustees, not the Mayor, is the final policymaker for the Village. There are several issues with Defendants' arguments.

First, "[t]here is no heightened pleading requirement in municipal liability cases brought under Section 1983." *Carpanzano v. College of DuPage*, No. 3 C 4358, 2003 U.S. Dist. LEXIS 22004 at *5 (N.D. Ill. Dec. 8, 2003). Plaintiff is only required to plead facts sufficient to put Defendants on notice of his *Monell* claim against the Village, and has done so. Second, the issue before the Court at this stage is not determining who the final policymaker is for the Village. Rather, the issue boils down to whether Plaintiff has *pled* successfully that Mayor Pasquale and/or Clerk Moreland had final policymaking authority with respect to terminating Village employees. Plaintiff pled that Mayor Pasquale had such authority (via municipal ordinance and custom), exercised it repeatedly, and did so without any oversight from the Board of Trustees. It is

thus plausible, based on the allegations, that the Village allows Mayor Pasquale to set whatever firing criteria he sees fit. *See, Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 678 (7th Cir. 2009) (finding mayor to be *de facto* policymaker for municipality with respect to personnel decisions).

To be clear, the Court is not making a determination that Mayor Pasquale or Clerk Moreland are final policymakers with respect to terminating Village employees. The parties will have the opportunity to investigate and prove whether they are. At this stage of litigation, Plaintiff's allegations are sufficient, and as such, Plaintiff can proceed with his *Monell* claim under Count II.

## C.  Count III - Illinois Retaliatory Discharge Claim

Count III of Plaintiff's Complaint alleges retaliatory discharge under Illinois law against Mayor Pasquale, Clerk Moreland and the Village. This claim is dismissed as to Mayor Pasquale and Clerk Moreland, because under Illinois law, a plaintiff cannot bring an action for retaliatory discharge against the employee who carried out the discharge of the plaintiff on the employer's behalf. *Buckner v. Atlantic Plant Maint.*, 694 N.E.2d 565, 569-70 (Ill. 1998). "[T]he only proper defendant in a retaliatory discharge action is the plaintiff's former employer." *Id.* at 570; *see also, Stenson v. Town of Cicero*, No. 03 C 6642, 2005 U.S. Dist. LEXIS 48115 at *68 (N.D. Mar. 15, Ill. 2005). Plaintiff alleges in his Complaint that he was an employee of the Village, not of Mayor

Pasquale or Clerk Moreland.  As such, any claim for retaliatory discharge can only be asserted against the Village.

To state a retaliatory discharge claim in Illinois, an employee must allege he was:  (1) discharged by the employer; (2) in retaliation for his activities; and (3) that the discharge violates a clear mandate of public policy.  *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009).  Plaintiff alleges clearly the first two requirements – that he was discharged by the Village in retaliation for reporting the problems with the Teen Zone and for complaining about the alleged compelled political activities.  The only remaining question is whether Plaintiff's discharge violates a clear mandate of public policy.

In performing such an analysis, the public policy must be found in the state's constitution, statutes or, where they are silent, in the judicial decisions of the state's courts.  *Elliott v. Lake County Cmty. Action Project*, No. 00 C 0842, 2000 U.S. Dist. LEXIS 9476 at *9 (N.D. Ill. July 6, 2000).  To survive a motion to dismiss, a plaintiff must show that a cited provision embodies a public policy, and that her discharge contravenes that public policy.  *Id.*  "Simply citing a constitutional or statutory provision is not enough – the policy identified in the complaint must strike at the heart of a citizen's social rights, duties and responsibilities before a tort will be allowed, or involve the protection of each citizen's health and safety."  *Id.* at *9-10.

In his Complaint, Plaintiff identifies three sources of policy:  The Occupational and Safety Health Act of 1970 ("OSHA"), 29 U.S.C. §660(c)(1); the Illinois Constitution; and the Illinois Local Governmental Employees Political Rights Act ("LGEPRA"), 50 ILCS 135/10(b).

OSHA states:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

29 U.S.C. §660(c)(1).  OSHA is not a state-law based expression of public policy; however, "the Illinois Supreme Court has indicated that Federal laws that are national in scope and affect citizens generally can state public policy." *Elliott*, 2000 U.S. Dist. LEXIS 9476 at *10.  Indeed, Illinois courts have held consistently that policies affecting the health and safety of citizens will support a claim of retaliatory discharge.  *Id.*  The statute clearly delineates a public policy protecting employees from discharge for exercising their rights under the OSHA, which include reporting occupational and safety hazards.  As such, Plaintiff has stated a claim for retaliatory discharge under Illinois law based on his alleged termination for reporting problems with the Teen Zone to OSHA.

Plaintiff also cites to the LGEPRA as support for his retaliatory discharge claim. That statute provides in part:

> No employee of a unit of local government or school district may (I) use his or her official position of employment to coerce or inhibit others in the free exercise of their political rights or (ii) engage in political activities while at work or on duty.

50 Ill. Comp. Stat. 135/10(b). It is clear this provision seeks to implement a policy restricting local government employees from using their positions to coerce others with respect to the exercise of their political rights. As such, Plaintiff has also stated a claim for retaliatory discharge under Illinois law based on his alleged termination for voicing his displeasure at being compelled to participate in political activities.

The Court notes that Defendants make a number of arguments seeking to dismiss Count III that are improper at this stage. For example, they complain that one of Defendant's allegations regarding statements made by Mayor Pasquale "lacks any context or substantiation." Defs.' Mem. in Support of Mot. to Dismiss at 13. They also argue that plaintiff "must prove" that a retaliatory motive played a causal role in his termination. *Id.* Finally, Defendants claim that "[t]o establish pretext," Plaintiff "must show" that either a retaliatory animus more likely motivated the Village, or that the Village's proffered explanations are unworthy of credence, which Plaintiff has made "no attempt to establish." *Id.* at 14. None of these arguments are appropriate for a motion to

dismiss. Plaintiff need not "prove," "substantiate" or "establish" any allegations at this point. All he must do is satisfy Rule 8, which Plaintiff has with respect to alleging Count III against the Village.

Thus, Defendants' Motion to Dismiss Count III is granted as to Mayor Pasquale and Clerk Moreland, and denied as to the Village.

### D. Count IV - Conspiracy to Violate Constitutional Rights

Defendants next attack Plaintiff's claim of conspiracy between Mayor Pasquale and Clerk Moreland. Conspiracy is not an independent basis of liability under § 1983. *Cobbs v. Evans*, No. 13 C 3990, 2013 U.S. Dist. LEXIS 77290 at *3-4 (N.D. Ill. June 3, 2013). There must be an underlying constitutional injury, or the conspiracy claim fails. *Id.* To state a § 1983 claim, Plaintiff must allege that Defendants deprived him of a constitutional right, and that they did so acting under color of state law. *Cooney v. Casady,* 652 F.Supp.2d 948, 957 (N.D. Ill. 2009). A plaintiff alleging a § 1983 conspiracy must indicate "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Id.; see also, Johnson v. Village of Maywood,* No. 12 C 3014, 2012 U.S. Dist. LEXIS 164525 at *10 (N.D. Ill. Nov. 19, 2012).

Plaintiff has met this standard and more. The parties, purpose, and approximate date of the agreement are sufficiently clear so that Defendants are on notice of the basis of the claim.

The Complaint alleges that the parties of the conspiracy were Mayor Pasquale and Clerk Moreland, who began meeting in early 2012 to develop a plan with several objectives. The purposes of the conspiracy were: (1) to punish Plaintiff for exercising his freedom of speech in reporting the problems at the Teen Zone; (2) to dissuade other Village employees from exercising their right to free speech; and (3) to prevent Plaintiff from exercising his right to free speech in the future. The alleged conspirators acted in furtherance of the conspiracy by closing the Village's electrical department and terminating Plaintiff's employment. Plaintiff also pleads personal motivations for each Defendant for entering into the alleged conspiracy. These allegations are sufficient to survive a motion to dismiss.

Defendants, citing *Roehl v. Merrilees*, No. 11 C 4886, 2012 U.S. Dist. LEXIS 50253 (N.D. Ill. Apr. 10, 2012), argue that these allegations are not enough, because the pleading requirements for conspiracy have increased since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That may be true, but conspiracy claims were always held to a slightly higher pleading requirement, even before *Twombley and Iqbal*. *See, Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009). A bare allegation of conspiracy was never enough to survive a motion to dismiss for failure to state a claim. *Id.* Following *Twombley* and *Iqbal*, which were concerned with requiring plausible

allegations, the Seventh Circuit made clear that "the height of the pleading requirement is relative to circumstances." *Cooney*, 583 F.3d at 971; *see also, Roehl* 2012 U.S. Dist. LEXIS 50253 at *21. The complexity of the case is one such circumstance courts examine, as courts are loathe to allow discovery to proceed regarding "a vast, encompassing conspiracy" without meeting a high standard of plausibility. *See, Cooney*, 583 F.3d at 971.

The Court sees nothing in the circumstances of this case that require raising the already high pleading standard for a conspiracy claim even further. This is not a complex case, nor does it involve allegations of a complex conspiracy. Count IV alleges a conspiracy between two individuals, Mayor Pasquale and Clerk Moreland, and asserts factual allegations sufficient to put them on notice of the claim. In addition, Plaintiff's Complaint contains far more detail than the bald conspiracy allegations pled in *Roehl*. *See,* 2012 U.S. Dist. LEXIS 50253 at *22-23. The Court finds those allegations sufficient to state a conspiracy claim under these circumstances.

Defendants next argue that Plaintiff's conspiracy claim is barred under the "intra-corporate" conspiracy doctrine, which holds that a conspiracy cannot exist solely between members of the same entity. *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, No. 10-cv-7870, 2012 U.S. Dist. LEXIS 157227 at *21 (N.D. Ill. Nov. 1 2012). The Seventh Circuit has yet to decide whether the

doctrine applies to § 1983 conspiracy claims, and district courts in this Circuit are split on whether it does. *See, Johnson*, 2012 U.S. Dist. LEXIS 164525 at *7 (discussing cases). Even assuming the doctrine applies to § 1983 conspiracy claims, it would not bar Count IV.

First, the intra-corporate conspiracy doctrine is not a bar because Plaintiff alleges that Defendants conspired to deprive him unlawfully of his civil rights. "The deprivation of civil rights is unlawful and the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's 'lawful business.'" *Sassak v. City of Park* Ridge, 431 F.Supp.2d 810, 821 (N.D. Ill. 2006). As such, the doctrine is inapplicable.

Second, an exception to the intra-corporate conspiracy doctrine exists where employees are motivated solely by personal bias. *Hartman v. Board of Trustees of Community College Dist.*, 4 F.3d 465, 470 (7th Cir. 1993). Plaintiff alleged in his Complaint that both Mayor Pasquale and Clerk Moreland were motivated by personal bias, *see,* Compl. ¶¶ 93-94, and raised the *Hartman* exception in his Response. Defendants' failed to address this argument. The Court thus finds that Plaintiff pled sufficiently that Mayor Pasquale and Clerk Moreland acted with personal animus to retaliate against Plaintiff, thereby making the intra-corporate conspiracy doctrine inapplicable. Defendant's Motion to Dismiss Count IV is denied.

# IV.  CONCLUSION

For the reasons stated herein, Defendant's 12(b)(6) Motion to Dismiss [ECF No. 12] is granted in part and denied in part. Specifically:

1.    The official capacity claims against Mayor Pasquale and Clerk Moreland in Counts I-III are dismissed as redundant;

2.    The Motion to Dismiss Count I is withdrawn as to all Defendants, and to the extent it is not, it is denied;

3.    The Motion to Dismiss Count II is granted as to Clerk Moreland and denied as to the other Defendants;

4.    The motion to dismiss Count III is granted as to Mayor Pasquale and Clerk Moreland and denied as to the Village; and

5.    The Motion to Dismiss Count IV is denied.

**IT IS SO ORDERED.**

_____
                    Harry D. Leinenweber, Judge
                    United States District Court

Date: August 22, 2013